***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1), as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The date of the alleged injury is 24 April 2000.
3. An employer-employee relationship existed between plaintiff and defendant on 24 April 2000.
4. Defendant Broyhill Furniture Industries, Inc. was a duly qualified self-insured at all relevant times herein with CompManagement, Inc., formerly known as Trigon Administrators, Inc., serving as the administering agent.
5. Plaintiff's average weekly wage on 24 April 2000, pursuant to the submitted Industrial Commission Form 22, which was admitted into the record and marked as Stipulated Exhibit (2), was $403.40, yielding a compensation rate of $268.94.
6. Judicial notice is taken of Industrial Commission Forms 18, 33 and 33R.
7. At the hearing, the parties also submitted a Packet of Medical Records, which was admitted into the record and marked collectively as Stipulated Exhibit (3) and a Family and Medical Leave Act Application which was admitted into the record and marked as Stipulated Exhibit (4).
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 53 years old. Plaintiff completed six or seven months of the first grade of elementary school in Mexico, where she was born. Plaintiff cannot read or write in either English or Spanish and does not have a working verbal command of the English language. Mr. Luis Jimenez served as an interpreter during the hearing before the Deputy Commissioner.
2. Prior to beginning working for defendant, plaintiff worked for another furniture company preparing wood; she also worked for a company where she folded and counted blue jeans, at a "burger place," and as an "apple packer" on a farm.
3. On 17 September 1993, plaintiff began working for defendant, first as a cleaner, then with cabinets. On 24 April 2000, plaintiff was working with headboards. On that date, while lifting a headboard, plaintiff experienced the immediate onset of pain in her lower back. Plaintiff reported the incident to co-workers, to her supervisor Mr. Tony Corpening, and to Ms. Drema Arnett, who performs clerical work for defendant and also serves as its plant nurse and "first responder" for work-place injuries.
4. Following plaintiff's injury, Mr. Corpening transferred her to a light duty position and instructed plaintiff to report her injury to Ms. Arnett.
5. After plaintiff reported her injury, Ms. Arnett gave her some pain medication, put a muscle relaxer cream on the affected area and scheduled an appointment with a physician. Plaintiff, who has a significant language barrier, attempted to attend the scheduled appointment, but was unsuccessful because she was unable to locate the doctor's office.
6. On 12 May 2000, plaintiff presented to the Convenient Care Center of Caldwell Memorial Hospital. Following her examination plaintiff was given a note excusing her from work for one day and allowing her to return to work on 13 May 2000 involving no lifting for one week. Plaintiff next presented to Physician's Assistant Melanie T. Kersey of Main Street Medical Park on 25 May 2000. Ms. Kersey testified in her deposition that she examined plaintiff and noted some tenderness along the paralumbar spinal area and along the left SI joint. She ordered x-rays, gave plaintiff a muscle relaxer and anti-inflammatory medication and told her to return in two weeks if her condition did not improve.
7. Plaintiff returned to Physician's Assistant Kersey on 7 June 2000. Ms. Kersey reviewed the x-rays and noted that they were normal. She further noted that plaintiff had "improved somewhat" but still had some pain. Ms. Kersey increased plaintiff's medication and gave her a note excusing her from work until she could be examined by an orthopedic surgeon on 14 June 2000. Plaintiff did not present to an orthopedic surgeon due to the cost, but instead decided to seek medical treatment in Mexico. Plaintiff applied for a "Leave of Absence" under the Family and Medical Leave Act on or about 8 June 2000. The period of leave requested was 1 year. It appears that the only item on the "Leave of Absence" form that plaintiff herself completed was her signature. It is unclear from the record whether the leave was approved, but Stipulated Exhibit 4 indicates that plaintiff was provided an FMLA Fact Sheet on 9 June 2000. It is also unclear why the "Leave of Absence" indicated "1 year."
8. The record does not clarify what days plaintiff missed from work after 12 May 2000; she testified that she missed several days due to pain prior to the date she was excused from work by the P.A. Kersey in June.
9. At the hearing before the Deputy Commissioner, Ms. Arnett denied taking the actions attributed to her by plaintiff. Ms. Arnett confirmed that she had provided plaintiff with a Family and Medical Leave Act form, but further testified that despite her position with defendant as plant nurse and first responder for work place injuries, she did not know or inquire as to why it was needed. Ms. Arnett did state, however, that she was aware of the 12 May 2000 restriction note and the 7 June 2000 out-of-work note provided to plaintiff by medical professionals from the Convenient Care Center and the Main Street Medical Park. Ms. Arnett was also aware that Ms. Melanie Kersey, P.A., of the Main Street Medical Park, had referred plaintiff to an orthopaedic specialist. Although "curious" as to the reason for the referral, Ms. Arnett testified that she made no inquiry as to the reason for it.
10. During her testimony before the Deputy Commissioner, Ms. Arnett was, at times, evasive and displayed a selective memory of events. Based upon these factors and the inconsistencies in her testimony, Ms. Arnett's testimony regarding plaintiff's injury and the notice provided to defendant is not given any weight.
11. Based upon the credible evidence of record, the Full Commission finds that plaintiff timely provided actual notice to defendant of her claim of a work related injury occurring on 24 April 2000. Furthermore, any delay by plaintiff in providing written notification is reasonably excused given the overall circumstances of this case and the extreme language barrier. Defendant was not prejudiced in any manner by any delay in plaintiff providing formal, written notification.
12. On 12 June 2000, a co-employee brought a handwritten note from plaintiff to defendant's Human Resources Manager, Ms. Ora Lee Brakefield, which indicated that plaintiff remained unable to return to work. Also, around this time, plaintiff's Family and Medical Leave Act form was delivered to defendant and plaintiff traveled to Mexico to receive medical treatment. She remained in Mexico for less than two weeks. Plaintiff's travel to Mexico for medical treatment was due to the lower cost of healthcare in that country.
13. Following receipt of plaintiff's 12 June 2000 handwritten note, Ms. Brakefield attempted to contact plaintiff without success. Ms. Brakefield then requested that plaintiff's supervisor, Tony Beam, contact plaintiff's husband who also worked for defendant in an attempt to reach plaintiff. Plaintiff's husband informed Mr. Beam that plaintiff had traveled to Mexico and he did not know when she would return. Once Ms. Brakefield received this information, plaintiff was terminated on 26 June 2000. Plaintiff did not learn of her termination until she returned from Mexico a few days later. Plaintiff's medical records from Mexico are not part of the record.
14. Physician's Assistant Kersey clarified in her deposition testimony that the out-of-work note provided to plaintiff on 7 June 2000 was meant to excuse plaintiff from work until she was able to be examined by an orthopaedic surgeon on 14 June 2000. Plaintiff delivered this doctor's note to Oralee M. Brakefield on 7 June 2000. However, plaintiff did not report for an orthopedic examination until she presented to Dr. Ralph J. Maxy on 8 March 2001. Dr. Maxy found that plaintiff had sustained back muscle strain with spasms, and based upon plaintiff's statements, he attributed her condition to the incident at work on 24 April 2000. At his deposition, Dr. Maxy testified that the type of sprain plaintiff sustained could continue to produce symptoms for a significant period of time. Dr. Maxy was of the opinion that as a result of the injuries sustained on 24 April 2000, plaintiff was capable of only light duty work involving the lifting of no more than 15-20 pounds, along with infrequent bending, twisting or stooping. Dr. Maxy has not opined that plaintiff is currently totally disabled.
15. Dr. Maxy recommended that plaintiff be seen by a therapist for body mechanics training so that she could learn how to properly lift and stand, and how to use her legs instead of her back. Dr. Maxy further opined that plaintiff needed to strengthen the muscles in her back as part of her recovery.
16. On 24 April 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant in the form of a specific traumatic incident of the work assigned.
17. The evidence shows that at some time in early June 2000, plaintiff voluntarily left the country and went home to Mexico to receive medical treatment, among other reasons. She did not give her employer any notice of her leaving, and her subsequent termination from employment was for just cause and for reasons unrelated to her injury for which a non-disabled employee would also have been terminated. Further, plaintiff's termination for just cause constitutes constructive refusal to accept suitable employment, and plaintiff has made no effort to obtain other suitable employment following her termination by defendant.
18. Plaintiff has failed to present sufficient evidence to establish that she has been unable to earn any wages in her former position with defendant or in any other employment for the period of 15 June 2000 through the present for reasons causally related to her work-related injury of 24 April 2000. Plaintiff's last medical note excused her from work through 14 June 2000, the date she was scheduled to see an orthopedic surgeon. Plaintiff did not notify defendant-employer of her medical status after her return from Mexico, nor did she attempt to find suitable employment.
19. Plaintiff has not presented sufficient medical evidence to support her claim for total disability after 14 June 2000. Her x-rays and MRI were essentially normal and Dr. Maxy was of the opinion that plaintiff was capable of light duty work at the time of his examinations on 8 March and 15 March 2001.
20. Plaintiff has failed to produce sufficient evidence from which to find that defendant defended this claim without reasonable ground; therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
21. The medical treatment plaintiff received from Dr. Maxy was reasonably required to effect a cure, provide relief or lessen plaintiff's disability. Plaintiff is in need of further medical treatment for the pain and other symptoms which Dr. Maxy expects to result from plaintiff injuries.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 24 April 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Any delay by plaintiff in providing written notification of her injury to defendant is reasonably excused given the overall circumstances of this case and the extreme language barrier. N.C. Gen. Stat. §97-22. Furthermore, defendant was not prejudiced in any manner by any such delay, and possessed actual timely notice of plaintiff's claim of a work related injury occurring on 24 April 2000. Id.
3. The record shows that plaintiff was terminated for cause, or reasons unrelated to her injury for which a non-disabled employee would also have been terminated. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996). Plaintiff's termination for cause constitutes constructive refusal to accept suitable employment after 14 June 2000. N.C. Gen. Stat. § 97-32; Williams v. Pee DeeElec. Membership Corp., 130 N.C. App. 298, 502 S.E.2d 645 (1998).
4. As the result of her 24 April 2000 injury by accident, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred which are related to her 24 April 2000 injury by accident, including plaintiff's treatment by Dr. Maxy. N.C. Gen. Stat. § 97-25.
5. Because plaintiff has constructively refused suitable employment offered by defendant and has not made reasonable efforts to obtain suitable employment, she has failed thus far to prove disability after 14 June 2000 resulting from the work-related injury of 24 April 2000; therefore, she is entitled to disability compensation for 14 June 2000 only, after allowing for the seven day waiting period from 7 June through 13 June 2000. N.C. Gen. Stat. § 97-32.
6. Because plaintiff failed to produce sufficient evidence upon which to find that defendant defended this claim without reasonable grounds, she is not entitled to attorney's fees pursuant to the provisions of N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff which are related to her work-related injury on 24 April 2000, including her treatment by Dr. Maxy.
2. Defendant shall pay plaintiff temporary total disability compensation for one day (14 June 2000) at the weekly compensation rate of $268.94.
3. Plaintiff's attorney is entitled to an attorney's fee on one fourth of the compensation awarded to plaintiff herein.
4. Defendant shall pay the costs.
5. Plaintiff's entitlement to additional indemnity compensation (if any) after reasonable medical treatment is provided and if she makes a reasonable effort to find suitable employment or otherwise proves continuing disability shall be reserved for subsequent determination.
This the ___ day of October, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN